```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BLUEFIELD
```

BRYAN VAGENOS,
Personal Representative of
the ESTATE OF DEBORAH CROUCH,

    Plaintiff,

v.                                  CIVIL ACTION NO. 1:09-1523

ALZA CORPORATION, et al.,

    Defendants.


MEMORANDUM OPINION AND ORDER

Pending before the court are the following motions: (1) the motion to dismiss of defendant Judy's Drug Store, Inc. (Doc. # 5); (2) plaintiff's motion to remand (Doc. # 16); and (3) plaintiff's motion for leave to amend the complaint to add Dr. Rajan Masih as a defendant and a second motion to remand (Doc. # 20).  For reasons discussed more fully below, the motion to dismiss is GRANTED, the first motion to remand is DENIED, the motion to amend the complaint is GRANTED and the second motion to remand is GRANTED.[1]

I.  Background

On November 19, 2009, plaintiff Bryan Vagenos, as personal representative for the estate of his mother Deborah Crouch, filed

---

[1] Plaintiff's Motion to Stay the Ruling on the Motion to Dismiss for 45 days to Allow the Court to Decide Plaintiff's Forthcoming Motion to Amend Complaint and Remand Case to State Court (Doc. #13) is DENIED as moot.

this wrongful death action in the Circuit Court of McDowell County. In his complaint, plaintiff alleges that his mother's use of a Sandoz fentanyl patch, obtained from a prescription written by Dr. Masih, caused her death on December 1, 2007. The following entities were named as defendants in the lawsuit: ALZA Corporation, the designer and manufacturer of the patch; Sandoz Inc., the marketer and distributor of the patch; Judy's Drug Store, Inc., also alleged to be a distributor and marketer of the patch; and John Does 1-25.

On December 18, 2009, ALZA and Sandoz removed the case to this court on the basis of diversity of citizenship. In so doing, they contended that Judy's Drug Store, the lone West Virginia defendant, had been fraudulently joined to defeat diversity. On December 28, 2009, Judy's Drug Store moved to dismiss the complaint against it for the same reasons. Plaintiff filed a memorandum in opposition to the dismissal of Judy's Drug Store, as well as a motion to remand arguing that Judy's Drug Store was not fraudulently joined.

Thereafter, on February 9, 2010, plaintiff filed a motion to amend his complaint to add Dr. Masih as a defendant and, in the event leave to amend is granted, a motion to remand the case to state court. Dr. Masih was not named as a defendant in the original lawsuit because plaintiff had not yet complied with the notice and other statutory prerequisites under West Virginia law.

2

Plaintiff has now allegedly complied with those prerequisites to filing suit and the instant motion to amend followed.  Defendants ALZA and Sandoz oppose amendment of the complaint to add Dr. Masih as a defendant.

## II.  Motion to Remand

28 U.S.C. § 1441(a), the statute governing the right to remove a case from state to federal court provides in relevant part:

> [A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .

"The burden of establishing federal jurisdiction is placed upon the party seeking removal."  Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).  However, because removal jurisdiction raises significant federalism concerns, the federal courts are directed to strictly construe it.  See id.; see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941).  "If federal jurisdiction is doubtful, a remand is necessary."  Mulcahey, 29 F.3d at 151.

Section 1332 of Title 28 confers subject matter jurisdiction upon federal courts over civil actions in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the action is between citizens of different states."  See also Athena Automotive, Inc. v.

3

DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999). Since its enactment, the Supreme Court of the United States has interpreted the statute to require "complete diversity" of citizenship. Strawbridge v. Curtiss, 3 Cranch 267 (1806).

In support of his argument that diversity jurisdiction exists, plaintiff argues that his claims against Judy's Drug Store for negligence and negligent misrepresentation are viable. Specifically, he alleges that "Plaintiff is not making any claims regarding the quality of the Crouch Patches within the meaning of West Virginia Code § 30-5-12. Plaintiff's claims against Judy's Pharmacy are limited to claims for the failure to provide adequate warnings regarding the Patch." Complaint ¶ 43. Defendants counter that, because plaintiff has failed to allege a cause of action against Judy's for which he may recover, Judy's Drug Store was fraudulently joined for the purposes of defeating diversity jurisdiction.

This court has previously noted that:

> The practice of joining an agent, employee or accomplice of a corporation as a party defendant is becoming more common every day. The device is frankly used by counsel as a method to defeat diversity jurisdiction and it often succeeds. It succeeds because the federal courts of appeals have adopted rigorous standards governing the issue of fraudulent joinder. "Fraudulent joinder" ironically, requires neither fraud nor joinder. As our court of appeals stated in Aids Counseling and Testing Centers v. Group W. Television, Inc., 903 F.2d 1000, 1003 (4th Cir. 1990): "`Fraudulent joinder' is a term of art [which does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court

> finds either that no cause of action is stated against [a] nondiverse defendant, <u>or in fact</u> no cause of action exists." (emphasis in original).[2]
>
> * * *
>
> [In <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 424 (4th Cir. 1999)], our court of appeals said: "The party alleging fraudulent joinder bears a heavy burden - - it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." This standard is said to be even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>See</u> <u>id.</u> <u>See also</u> <u>Miller v. BAS Technical Employment</u>, 153 F. Supp. 2d 835, 837 (S.D.W. Va. 2001). To defeat removal all that is required is the possibility of a right to relief by the plaintiff. <u>See</u> <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 233 (4th Cir. 1993).

<u>Fleming v. United Teacher Associates, Ins. Co.</u>, 250 F. Supp. 2d 658, 661-62 (S.D.W. Va. 2003).

The Fourth Circuit has determined the exercise of removal jurisdiction inappropriate where there "is at least some possibility that plaintiff will recover against the" allegedly fraudulently joined party. <u>Hartley</u>, 187 F.3d at 423; <u>see also</u> <u>McWilliams v. Monarch Rubber Co.</u>, 70 F. Supp. 2d 663, 664 (S.D.W. Va. 1999).

Courts have commented on the widespread practice of fraudulently joining pharmacies in products liability actions

---

[2] Fraudulent joinder may also be established where "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." <u>Mayes v. Rapoport</u>, 198 F.3d 457, 464 (4th Cir 1999) (citations omitted). Defendants allege no fraud in plaintiff's pleadings.

5

against drug manufacturers in an attempt to defeat diversity jurisdiction.  <u>In re Diet Drugs Products (Phentermine, Fenfluramine, Dexfenfluramine) Liability Litigation</u>, 220 F. Supp.2d 414, 424 (E.D. Pa. 2002) ("[T]here is a pattern of pharmacies being named in complaints, but never pursued to judgment, typically being voluntarily dismissed at some point after the defendants' ability to remove the case has expired.").

Defendants contend that West Virginia Code § 30-5-12 immunizes Judy's Drug Store from liability on the failure to warn claim.  That section provides:

> [A]ll persons, whether licensed pharmacists or not, shall be responsible for the quality of all drugs, chemicals and medicines they may sell or dispense, with the exception of those sold in or dispensed unchanged from the original retail package of the manufacturer, in which event the manufacturer shall be responsible.

W. Va. Code § 30-5-12.  Plaintiff argues that the immunity provided by § 30-5-12 does not encompass failure to warn claims.

The majority of courts to consider the issue have concluded that § 30-5-12 shields pharmacists from liability on failure to warn claims.  See <u>Thomas v. Wyeth</u>, 2005 WL 3754203, *3 (S.D.W. Va. 2005) (Chambers, J.) ("[T]he court finds Plaintiff's claims of negligence, failure to warn and breach of express and implied warranty [against the pharmacy defendants] barred under § 30-5-12."); <u>In re Baycol Products Litigation</u>, 2003 WL 22038708, *9 (D. Minn. 2003) ("[E]ven if the Court construes the Complaint as alleging a failure to warn claim against Pen-Way, the Court finds

6

that such claim is also precluded by § 30-5-12."). The <u>Baycol</u> court discussed the scope of § 30-5-12:

> The Plaintiffs argue that § 30-5-12 is concerned only with the quality of the drugs sold. Thus, the statute only precludes a plaintiff from bringing a design defect or structural defect claim against a defendant pharmacy where such defendant pharmacy sells or dispenses the drug in the original retail packaging of the manufacturer. West Virginia recognizes three theories of strict liability, which are not necessarily mutually exclusive: structural, design and use defects (which is the failure to warn). Plaintiffs argue that structural and design defects clearly concern the "quality" of the drug product, whereas failure to warn concerns the quality of the labeling and warnings. Therefore the statute should be interpreted as precluding structural and design defects claims against a defendant pharmacy for a drug sold or dispensed in the original package of the manufacturer. Plaintiffs ask this Court not to place any reliance on the <u>Rezulin</u> decision, as that case did not involve a strict liability, failure to warn claim. Plaintiffs further argue that as no court in West Virginia has decided this issue, the matter should be remanded to allow the state court to address the issue.
>
> * * *
>
> [E]ven if the Court construes the Complaint as alleging a failure to warn claim against Pen-Way, the Court finds that such claim is also precluded by § 30-5-12. If the legislature intended to preclude only two of the three strict liability theories recognized by the West Virginia courts through the passage of § 30-5-12, it would have explicitly included those theories in the statutory language. . . . Given the legal landscape concerning this issue throughout the United States, together with the enactment of § 30-5-12, it is thus unlikely that West Virginia's highest court would recognize a cause of action for failure to warn against a pharmacist.

<u>In re Baycol Products Litigation</u>, 2003 WL 22038708, *8-9 (internal citations omitted).

In support of his position that § 30-5-12(a) does not immunize Judy's Drug Store from liability on his failure to warn claim, plaintiff relies on the case of <u>Walker v. Rite Aid of West Virginia</u>, 2003 WL 24215831, *5 (S.D.W. Va. 2003) (Copenhaver, J.), wherein Judge Copenhaver concluded that the immunity provided by § 30-5-12 did not extend to failure to warn claims based on the sale and consumption of nonprescription drugs. Defendants point out, however, that Judge Copenhaver limited his holding in <u>Walker</u> to nonprescription drugs.  <u>See</u> <u>id.</u> at *5 ("This, however, is not a prescription drug case and it is not a pharmacist case; rather, it is the case of a nonprescription drug that happened to be sold at a store that also contains a pharmacy.").  Furthermore, in a subsequent case, Judge Copenhaver found that a pharmacy was insulated from liability on a failure to warn claim based on the learned intermediary doctrine.  <u>See</u> <u>Ashworth v. Albers Medical, Inc.</u>, 395 F. Supp.2d 395, 407 (S.D.W. Va. 2005) (Copenhaver, J.) ("The learned intermediary doctrine, which the court believes would be adopted by the West Virginia Supreme Court, protects Rite Aid from a failure to warn claim with respect to prescription drugs such as Lipitor.").

Other courts have held that the learned intermediary doctrine "prohibits a cause of action against a pharmacy for the failure to warn of characteristics of prescription drugs."  <u>Baker v. Purdue Pharma L.P.</u>, 2002 WL 34213424, *4 (S.D.W. Va. 2002)

(Faber, J.) (predicting that West Virginia would adopt the learned intermediary doctrine in this context); see also In re Rezulin Products Liability Litigation, 133 F. Supp.2d 272, 288-94 (S.D.N.Y. 2001) (discussing widespread adoption of learned intermediary doctrine in context of a pharmacist's duty to warn). In discussing Mississippi's adherence to the learned intermediary doctrine, the Rezulin court discussed the rationale behind the doctrine:

> The Mississippi Supreme Court has been quite clear in the rationale for its adoption fo the learned intermediary doctrine.  Its central point is that physicians determine the proper care of the patient.  Imposing a duty to warn patients would threaten to undermine reliance on the physician's informed judgment regarding the appropriateness of a particular drug for a particular patient by confronting the patient with warnings from risk adverse manufacturers, which may be difficult for lay persons to understand, which often will have no relevance to the particular patient, and which in any case cannot take account of all of the patient-specific information in the hands of the prescribing physician.  In consequence, the manufacturer has a duty to warn the physician and the physician alone.
>
> The rationale of Mississippi's learned intermediary doctrine applies four-square to the question whether pharmacies have a duty to warn of the intrinsic dangers of prescription drugs.  Such warnings would create substantially the same risks as manufacturer warnings to patients.  A risk adverse pharmacist would have every incentive to dispense cautions that may be uninformed, inapplicable to or misunderstood by the patient.  Such cautions would be at least as likely to undermine the physician's judgment as manufacturer warnings.  Almost every state confronted with the question has declined to impose on pharmacists a duty to warn of intrinsic dangers of prescription drugs for precisely this reason.

In re Rezulin Products Liability Litigation, 133 F. Supp.2d at 288-89.

Plaintiff counters that defendants' reliance on Ashworth, Baker, and Rezulin is misplaced given that, in 2007, the Supreme Court of Appeals of West Virginia rejected the learned intermediary doctrine. See State of West Virginia ex rel. Johnson & Johnson Corp. v. Karl, 647 S.E.2d 899, 914 (W. Va. 2007). However, as Judy's Drug Store points out, the Karl court abolished the doctrine as to manufactures only. Specifically, the court held:

> Under West Virginia products liability law, manufacturers of prescription drugs are subject to the same duty to warn consumers about the risks of their products as other manufacturers. We decline to adopt the learned intermediary exception to this general rule.

Id. In its decision, the Karl court discussed the history of the doctrine, as well as the state of advertising in the pharmaceutical industry. The court acknowledged that "[w]hen the learned intermediary doctrine was developed, direct-to-consumer advertising of prescription drugs was utterly unknown." Id. at 907; see also Roney v. Gencorp, 654 F. Supp.2d 501, 504 (S.D.W. Va. 2009). As the court explained:

> Since the early 1980's, direct-to-consumer advertising has boomed into a very profitable venture for pharmaceutical manufacturers. Yet, consumers' exposure to harm has increased as a result. They are surrounded by various prescription advertisements in all forms of print and broadcast media. Advertisements directed to consumers, however, often supply partial or incomplete

> information. Additionally, self-diagnosis by the consumer has resulted from these advertisements, as well as patient-demand for the brand-name drugs. It is in the best interest of the general public that manufacturers have a duty to warn the ultimate user of side effects and risks.

Id. at 913-14 (quoting Ozlem A. Bordes, *The Learned Intermediary Doctrine and Direct-to-Consumer Advertising: Should the Pharmaceutical Manufacturer Be Shielded from Liability?*, 81 U. Det. Mercy L. Rev. 267, 286-87 (Spring 2004)).

Given the rationale underpinning the decision and the fact that the Karl court did not discuss the doctrine in the context of a pharmacist's duty to warn, this court does not believe that the holdings in Ashworth, Baker, and Rezulin have been abrogated. Accordingly, the court predicts that the West Virginia Supreme Court of Appeals would find that the learned intermediary doctrine shields Judy's Drug Store from liability on the failure to warn claim. Furthermore, the court also finds that the immunity provided by § 30-5-12 extends to plaintiff's failure to warn claim. For these reasons, Judy's motion to dismiss is GRANTED and the motion to remand, filed on January 19, 2010, is DENIED.

### III. Motion to Amend

Plaintiff has also filed a motion to amend the complaint to assert claims against Dr. Masih, the prescribing physician. Defendants oppose the amendment because they argue that they will be prejudiced by losing their right to a federal forum.

> When a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e), which provides the district court with two options: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." These are the only two options for a district court faced with a post-removal attempt to join a nondiverse defendant; the statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case.

Mayes v. Rapoport, 198 F.3d 457, 461-62 (4th Cir. 1999). The decision on whether to permit joinder is committed to the sound discretion of the district court and it "is not controlled by a Rule 19 analysis." Id. at 462. Factors a court should consider in making this determination are: "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equitites." Id. at 462-63 (internal citations and quotations omitted).

Turning to the first factor, the court does not believe that plaintiff seeks to join Dr. Masih solely to defeat diversity. The certificate of merit completed by Dr. Christopher T. Grubbs demonstrates that plaintiff may have viable claims against Dr. Masih. See Exhibit A to Plaintiff's Motion to Amend. According to Dr. Grubbs, Crouch died as a result of fentanyl toxicity and Dr. Masih was the one who prescribed fentanyl to Ms. Crouch. If

the court does not grant the motion to amend, it is all but certain that plaintiff will not simply abandon his claims against Dr. Masih but, instead, be forced to file a separate lawsuit.

As to the second factor, plaintiff has not been dilatory in seeking to amend his complaint. On November 18, 2009, plaintiff sent Dr. Masih a notice of claim as required by West Virginia Code §55-7B-6. See id. This notice of claim is a prerequisite to filing an action against a health care provider. Plaintiff filed his complaint the next day. On December 11, 2009, Dr. Grubbs completed a screening certificate of merit, also a prerequisite to filing suit against Dr. Masih. Defendants removed the case to this court on December 18, 2009. On January 11, 2010, plaintiff filed a motion to stay in which he asserted that a motion to join Dr. Masih would be forthcoming. On February 9, 2010, plaintiff filed the instant motion to amend, well before the deadline of June 6, 2010 established in the court's Scheduling Order. Under these facts and circumstances the court cannot conclude that plaintiff has been dilatory. See Devore v. Bard, Inc., 2009 WL 3856657, *2 (S.D.W. Va. 2009) (Chambers, J.) ("[T]he court finds that Plaintiffs are not adding Dr. Nutt merely to defeat federal jurisdiction. It is clear that Plaintiffs intended to sue Dr. Nutt from the outset of this litigation, but they could not file their actions against him until they fulfilled the pre-suit requirements under West

13

Virginia law.  For this same reason, the Court finds that Plaintiffs were not dilatory in seeking the amendments.").

The court further concludes that the third factor – injury to plaintiff if amendment is not allowed – weighs in favor of granting the motion to amend.  If plaintiff is not allowed to add Dr. Masih to this lawsuit, he will be forced to file another case and will have to bear the substantial expense in both time and money of prosecuting two different cases (likely in two different courts) on the same set of facts.  Furthermore, it is likely that AZLA and Sandoz will attempt to shift liability from themselves to Dr. Masih and vice versa.[3]  Not only could this "spawn inconsistent results" but it would also be an "inefficient use of judicial resources."  <u>Mayes</u> at 463; <u>see also</u> <u>Devore</u> at *2 ("It is certainly conceivable that C.R. Bard may attempt to attribute liability, if any, upon Dr. Nutt.  Although C.R. Bard argues there is no prejudice to Plaintiffs to try the medical malpractice actions separately from the product liability actions, the Court agrees with Plaintiffs that it could result in inconsistent verdicts and substantial prejudice to them.  For instance, if the factfinders in the two separate actions find the

---

[3] For example, in their Answers, defendants asserted the following defenses: 1) that plaintiff had failed to name necessary and indispensable parties; 2) that Crouch's death was caused by a preexisting condition; and 3) that Crouch's death was caused in whole or part by the negligence of others.  ALZA's Answer to Complaint, ¶¶ 51, 55, and 56; Sandoz's Answer to Complaint ¶¶ 51, 55, and 56.

absent defendant liable for a plaintiff's injuries, the plaintiff will be unable to collect anything.").

The court must, however, consider all other factors bearing on the equities, including defendants' interest in staying in federal court. As to defendants' argument that it will be prejudiced by joinder of Dr. Masih because he is under indictment on criminal charges stemming from his treatment of Crouch and others, the court does not find this a compelling reason to deny the motion to amend. Nor can the court find that defendants have been unduly surprised by the request to join Dr. Masih as plaintiff has made his intent known since early in the case. See Murray v. State Farm Fire and Casualty Co., 870 F. Supp. 123, 126 (S.D.W. Va. 1994) (holding defendants not prejudiced by joinder of nondiverse party and resulting remand to state court where defendants knew from beginning of lawsuit of plaintiffs' intent to sue nondiverse defendant). Furthermore, there is no significant interest in having a federal court decide the state law issues herein. Finally, the "high probability of multiple lawsuits militates strongly in favor of a remand in this case." See Heininger v. Wecare Distributors, Inc., 706 F. Supp. 860, 863 (S.D. Fl. 1989). Therefore, the court concludes that plaintiff has established that he is entitled to amend the complaint. Accordingly, the court will grant plaintiff's motion to amend the

complaint and remand this case to the Circuit Court of McDowell County.

### IV. Conclusion

Based on the foregoing, the motion to dismiss of defendant Judy's Drug Store is **GRANTED** and plaintiff's motion to remand, filed on January 19, 2010, is **DENIED**. Plaintiff's motion to amend the complaint and remand is **GRANTED** and this case is **REMANDED** to the Circuit Court of McDowell County, West Virginia.

The Clerk is directed to send certified copies of this Memorandum Opinion and Order to all counsel of record and to the Clerk of the Circuit Court of McDowell County.

**IT IS SO ORDERED** this 23rd day of July, 2010.

ENTER:

*David A. Faber*

David A. Faber
Senior United States District Judge